Humbert ALDAMUY, Karl Newton, M.D., Henry Jackson, Ruben Cowart, D.D.S., Upstate Coalition on Minority Health, Plaintiffs,

v.

Nicholas PIRRO, Syracuse-Onondaga County Planning Agency, Michael O. Sawyer, Onondaga County Nominating Committee Health Systems Agency Development Task Force, John Abbott and Secretary of Health, Education and Welfare, Joseph F. Califano, Defendants.

No. 76–CV–204.

United States District Court, N. D. New York.

April 5, 1977.

---

Crystal, Manes & Rifken, Syracuse, N. Y., for plaintiffs; Sidney L. Manes, Syracuse, N. Y., of counsel.

Paul V. French, U. S. Atty., N. D. N. Y., Albany, N. Y., for defendants; Borge Varmer, Regional Atty., Region II, Winifred M. Nash, Asst. Regional Atty., Dept. of HEW, New York City, Joseph R. Matthews, Asst. U. S. Atty., Syracuse, N. Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

PORT, District Judge.

## NATURE OF PARTICULAR PROCEEDING

Plaintiffs brought this action to challenge the appointment of two individuals to the Board of Directors of the Central New York Health Systems Agency. The defendant, Secretary of Health, Education and Welfare, has moved to dismiss the action for lack of jurisdiction and for failure to state a claim. The motion of the Secretary to dismiss for failure to state a claim is well-grounded. Since no independent jurisdictional grounds exist as to the remaining defendants, the action against all remaining defendants is dismissed sua sponte.

## FACTS

### The Health Systems Agency.

The National Health Planning and Resources Development Act of 1974[1] (the Act) was enacted "to facilitate the development of recommendations for a national health planning policy [and], to augment areawide and State planning for health services . . . ." 42 U.S.C. § 300k(b). Pursuant to the Act, the United States was divided up into numerous geographic areas called Health Service Areas. 42 U.S.C. § 300l. For each Health Service Area there was to be one Health Systems Agency (HSA) which would be responsible for providing "effective health planning for its health service area". 42 U.S.C. § 300l-2(a)(4). The Act further provided that each HSA shall have a governing body which would essentially be responsible for the administration of the HSA.

The Act contains a number of requirements concerning the composition of the governing body of the HSA. Inter alia it provides that:

(C) The membership of the governing body and the executive committee (if any) of an agency shall meet the following requirements:

(i) A majority (but not more than 60 per centum of the members) shall be residents of the health service area served by the entity who are consumers of health care and who are not (nor within the twelve months preceding appointment been) providers of health care and who are broadly representative of the social, economic, linguistic and racial populations, geographic areas of the health service area, and major purchasers of health care.

42 U.S.C. § 300l-1(b)(3)(C)(i). The Act then requires that the remainder of the members shall be health care providers representing a variety of professions and institutions. Id. § 300l-1(b)(3)(C)(ii). It is further specifically required that the membership include "public elected officials and other representatives of governmental authorities" Id. at § 300l-1(b)(3)(C)(iii)(I), in the health service area along with a representative percentage of individuals who reside in non-metropolitan areas. Id. § 300l-1(b)(3)(C)(iii)(II).

### The Central New York Health Systems Agency.

A plan dividing New York State into eight health service areas was approved by the Secretary on September 2, 1975.[2] This dispute involves Area III, an eleven county region in Central New York.[3] After the publication of federal regulations concerning the selection, designation and composition of governing bodies of health systems agencies,[4] a Task Force for the Development of a Health Systems Agency (Task Force) convened in Syracuse for Area III. The Task Force applied to the Secretary for designation of Central New York Health Systems Agency (CNYHSA) as the HSA for Area III. The Task Force was also responsible for the selection of the original board of directors, which was to be the governing body of CNYHSA. The Secretary, finding that all statutory requirements for the governing body had been met, approved the application of CNYHSA.[5]

The four individual plaintiffs and the Upstate Coalition on Minority Health[6] disap-

---

1. 42 U.S.C. §§ 300k–300t; Pub.L.No. 93–641 (January 4, 1975).

2. Affidavit of Frank DiGiovanni, ¶ 4 (dated July 2, 1976) (hereafter, DiGiovanni Affidavit).

3. The eleven counties which comprise Area III are: Cayuga, Cortland, Madison, Onondaga, Oswego, Tompkins, Jefferson, Lewis, St. Lawrence, Herkimer and Oneida. Id.

4. 42 C.F.R. §§ 122.101–122.115 (1976).

5. DiGiovanni Affidavit, ¶ 23.

6. The Upstate Coalition on Minority Health was formed in the fall of 1975 to insure adequate representation of minorities, especially black persons, on the Task Force. The Coalition consists of approximately thirty individuals who claim affiliation with a wide variety of governmental bodies, community health organizations, health-related professions, and minority interests generally. See attachments to Affidavit of Sidney L. Manes (dated April 30, 1976) (hereafter Manes Affidavit).

proved of two of the five nominees to the board of directors representing minorities, asserting they did not really represent the minority community.[7]

The plaintiffs' complaint consists of a short formal statement alleging a failure on the part of the defendants as members of the Task Force to abide by the applicable law and regulations in the selection of the board of directors, together with a demand for a declaratory judgment and injunctive relief. The facts are spelled out in an affidavit of the attorney made part of the complaint by incorporation.

It is alleged that the membership of the CNYHSA board of directors violates the Act in two respects: 1) there is no representation from the geographic area of the inner city; and 2) the representation of social, economic, linguistic and racial populations is insufficient to satisfy the Act. The complaint asks for extensive declaratory and injunctive relief, including an injunction against seating the board of directors, approving CNYHSA as the HSA for Area III, and federal funding of CNYHSA. The supporting papers further specify the alleged inadequacies of the board of directors' membership: none of its members, including its "minority" members, lives in the inner city; none of its members can be classified as poor. The designation of government officials on the board of directors as consumers is attacked as a subterfuge. Finally, it is alleged that the minority members of the board of directors do not really represent the minority community.

## QUESTION

Did the Secretary, in approving CNYHSA and its board of directors to serve as the HSA for Area III, either violate the Act or abuse his discretion?

7. Manes Affidavit, ¶ 11; letter of plaintiff, Humbert Aldamuy, dated March 3, 1976, attached to Manes Affidavit.

8. The statute amending § 1331(a) does not mention its effect on cases already filed. *See* Pub.L.No. 94–574 (October 21, 1976). The Supreme Court has not addressed the question of

## DISCUSSION

*Standing.*

■ At oral argument, the Secretary contended that these plaintiffs lack the necessary standing to challenge the Secretary's approval of CNYHSA. Neither side has briefed the issue. However, the facts reveal that plaintiffs possess the requisite standing. The individual plaintiffs, along with several other persons, formed the Upstate Coalition in order to insure minority representation in the HSA selected for Area III. Plaintiffs then participated extensively in the activities of the Task Force and its nominating committee. Two of the plaintiffs sought membership on the board of directors, claiming they represented the minority community better than two of the other black persons selected by the Task Force. Accepting plaintiffs' allegations as truthful, it seems apparent that they have alleged "demonstrable, particularized injury", *Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), sufficient to establish their standing.

*Jurisdiction Over the Federal Defendant.*

■ The Secretary has moved to dismiss the action against him on the grounds of lack of federal jurisdiction. Jurisdiction was premised in the complaint on federal question, 28 U.S.C. § 1331(a), and at oral argument and in the briefs on mandamus, 28 U.S.C. § 1361. The knotty jurisdictional problems posed by mandamus, *see Billiteri v. United States Board of Parole*, 541 F.2d 938, 946–47 (2d Cir. 1976), and the jurisdictional amount under § 1331(a), *see generally* 1 *J. Moore, Federal Practice,* ¶ 0.96[3.–1] (2d Ed.1976), need not be pursued. Although the question is not entirely free of doubt,[8] jurisdiction can be assumed to exist

the effect of an expansion of federal jurisdiction on pending cases. However, an inference can be drawn from the cases which construe a restriction of federal jurisdiction. Such a restriction removes the jurisdiction of the federal courts to decide pending cases. *See, e. g., Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1868); *see generally P. Bator, P. Mishkin,*

under the recent amendment to § 1331(a) permitting suits against the United States, its agencies or officers without regard to the amount in controversy.[9] In any event, the motion to dismiss for failure to state a claim must be granted.

### The Secretary's Approval of CNYHSA.

■ The Act contains no specific provision establishing judicial review of the Secretary's approval or designation of an HSA.[10] Judicial review is, therefore, governed by the Administrative Procedure Act, 5 U.S.C. §§ 701–06. That statute provides that agency actions shall be set aside which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A).

Plaintiffs' attack on the Secretary's approval of CNYHSA focuses on the language of 42 U.S.C. § 300l–1(b)(3)(C)(i), which requires that the consumers on the CNYHSA board of directors be *"broadly representative* of the social, economic, linguistic and racial populations, geographic areas of the health service area, and major purchasers of health care." *Id.* (emphasis added). Aside from this general language, plaintiffs cannot point to any more specific provision of the Act which has allegedly been violated. The undisputed facts indicate that the proper percentage of consumers are serving on the board of directors.[11] Furthermore, the board of directors reflects a representative demographic selection of members from the eleven counties in Area III.[12] Nor can plaintiffs point to any specific requirement in the regulations which has been violated.[13]

D. Shapiro and H. Wechsler, *Hart and Wechsler's The Federal Courts and the Federal System* 309–75 (2d Ed.1973). Thus, it would seem that an expansion of federal jurisdiction within the limits of Article III would confer jurisdiction on the case.

9. Pub.L.No. 94–574 (October 21, 1976).

10. The Act does establish judicial review, in the Courts of Appeal, of certain of the Secretary's decisions on applications under the Act, not relevant to this case. *See* 42 U.S.C. § 300s.

■ Plaintiffs contend that no one on the board of directors represents the inner city. However, there is no requirement that the board of directors must specifically represent this geographic or socio-economic area. In fact, the only geographic areas which the Act specifically mentions are non-metropolitan. Congress was concerned that people residing in these areas be represented, in proportion to their population, on the HSA governing body. 42 U.S.C. § 300l–1(b)(3)(C)(iii)(II). Plaintiffs also contend that the presence of government officials, serving on the board of directors as consumers, is a subterfuge. Plaintiffs argue that this is another example of the "establishment [knowing] what is best for the poor."[14] However, plaintiffs' argument again conflicts with an express statutory provision. The Act mandates that the board of directors membership include "public elected officials and other representatives of governmental authorities." *Id.* § 300l–1(b)(3)(C)(iii)(I). The Act does not distinguish between consumers as such. The dividing line is drawn between consumers and providers.

■ Plaintiffs' argument can now be reduced to whether or not the board of directors "broadly represents" the population of Area III. In particular, plaintiffs contend that the minority members of the CNYHSA board of directors do not really represent the minority community. Defendant points out, however, that the minority population of Area III is well represented numerically. While 3.1% of the population of Area III can be characterized as non-white, 14% of the consumers on the board of directors are non-white.[15] 5.6% of

11. The board of directors has 67 members, 36 of whom are consumers. DiGiovanni Affidavit, ¶ 13.

12. *See* DiGiovanni Affidavit, Exh. VIII at 85.

13. *See* 42 C.F.R. §§ 122.101–122.115 (1976).

14. Manes Affidavit, ¶ 26.

15. DiGiovanni Affidavit, ¶ 21.

the population of Onondaga County is non-white. Yet three out of the nine consumers from Onondaga County are non-white.[16] In view of these facts, it can hardly be said that the Secretary abused his discretion by approving a governing body which fails to represent the minority community.

■ Plaintiffs' argument that the particular black persons selected to serve on the board of directors do not really represent the minority community must yield to the proper exercise of the Secretary's discretion. Because one might take issue with the Secretary's decision, or because other individuals might better represent minority concerns does not mean that an abuse of discretion has occurred. In fact, in a case such as this, where expertise in the health planning field resides in the Department of Health, Education and Welfare and not the courts, the Secretary's decision should be overturned only where it is "so arbitrary as to be clearly wrong". *Whelan v. Brinegar,* 538 F.2d 924, 927 (2d Cir. 1976). This principle of limited judicial review has been prescribed by the Supreme Court

> whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations.

*United States v. Shimer,* 367 U.S. 374, 382, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961). In the instant case, the Secretary is required to balance numerous factors in approving an HSA. The board of directors must be comprised of the proper balance of consumers and providers. The membership must reflect the population distribution throughout the eleven counties of Area III. Government officials and non-metropolitan residents must be included. The Secretary having met all these requirements, his decision that the members of the board of directors broadly represent the minority population of Area III with respect to social, economic and racial considerations must not

be disturbed. The Secretary's decision was not arbitrary, capricious, or an abuse of discretion. The Secretary's motion to dismiss plaintiffs' complaint is granted.

*Jurisdiction Over Remaining Defendants.*

Plaintiffs' claim against the federal defendant having been dismissed, this court, of its own motion, raises the question of lack of jurisdiction over the remaining defendants. These defendants are all individuals who were involved in the Task Force which created CNYHSA and nominated its board of directors. None of them are federal officials.

■ Plaintiffs' complaint bases jurisdiction on federal question, 28 U.S.C. § 1331(a). Although this case arises under a federal statute, plaintiffs have failed to satisfy the $10,000.00 jurisdictional amount requirement of Section 1331. In a suit for injunctive relief against a federal officer, "the amount in controversy is the value of the right to be protected or the extent of injury to be prevented." 1 *J. Moore, Federal Practice* ¶ 0.96[3.–1] at 940 (2d Ed.1976). None of the plaintiffs have stated facts which demonstrate that they will suffer injury which could be valued at over $10,-000.00. Nor have they asserted any rights which can be so valued.

■ At oral argument, plaintiffs' counsel contended that the amount in controversy was satisfied by the large sums to be appropriated to CNYHSA under the Act. Admittedly, these sums exceed $10,000.00; but this fact does not establish injury to the plaintiffs in an amount over $10,000.00. *Cf. Rosado v. Wyman,* 414 F.2d 170, 176–77 (2d Cir. 1969), *rev'd on other grounds,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

■ Finally, any attempt to exercise pendent jurisdiction over the non-federal defendants must fail. If no independent basis of jurisdiction over these defendants exists, they may not be brought into the suit as pendent parties. *See Aldinger v.*

---

16. *Id.*

*Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).[17]

For the reasons herein, it is

ORDERED, that the motion of the Secretary to dismiss the complaint against him on the grounds of failure to state a claim be and the same hereby is granted; and it is further

ORDERED, that the complaint be dismissed against the remaining defendants for lack of jurisdiction; and it is further

ORDERED, that a judgment dismissing the complaint be entered by the Clerk of the Court.

---

17. Congress has recently extended federal jurisdiction over defendants like the Secretary, without regard to jurisdictional amount. Pub. L.No.94–574 (October 21, 1976). However, this court concludes that "Congress has by implica-tion declined to extend federal jurisdiction over [parties] such as [Pirro, Sawyer and Abbott]." *Aldinger v. Howard,* 427 U.S. 1, 19, 96 S.Ct. 2413, 2422 (1976). Accordingly, no pendent jurisdiction over these defendants exists.