**TRANSOK PIPELINE COMPANY, an Oklahoma Corporation, Plaintiff-Appellee,**

v.

**Maxwell DARKS, Marvin Olivo, Agnes Lucas now Wesley, Defendants-Appellants.**

**Nos. 76–1647, 76–1648 and 76–1972.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 29, 1977.

Decided Nov. 14, 1977.

Rehearing Denied Dec. 12, 1977.

WILLIAM E. DOYLE, Circuit Judge.

The appellee Transok Pipeline Company brought this condemnation suit against Marvin Olivo, Maxwell Darks and Agnes Lucas now Wesley, and a number of others. The purpose of the action was to condemn an easement for the underground storage of natural gas, pursuant to an Oklahoma statute, 52 O.S. § 36.3 et seq. Federal jurisdiction is said to arise under 25 U.S.C. § 357, which authorizes the condemnation of lands allotted in severalty to Indians in the same manner as lands owned in fee. Jurisdiction as to appellants Darks and Olivo, who are not Indians, rests on the fact that a number of restricted Indians, including the appellant here, Lucas now Wesley, and the United States government, the fee holder in trust of Indian lands, are all named as defendants. Darks' cotenant in one tract and the mineral owners in his and Olivo's property are restricted Indians. This presents a somewhat tenuous problem with respect to pendent jurisdiction over state claims against persons other than the defendants on the federal claim, where a common nucleus of fact is present in both the federal claims and the state claim.

The Indian defendants were represented by the United States Attorney for the Eastern District of Oklahoma. On August 22, 1975, the Assistant United States Attorney representing the Indian defendants and the attorney for Transok entered into a stipulation that there was no issue to be submitted to a jury. Judgment was entered in accordance with a stipulation as to the amount, and it was directed that this be distributed among the individual defendants. The appellant Lucas (now Wesley) signed a stipulation which she received in the mail and accepted the check that accompanied it. Now she claims that she did not fully understand the stipulation and had no contact with the attorney who represented her. On August 23, 1976, her effort with three other restricted Indian defendants to set aside the judgment was denied.

The Olivo and Darks cases were submitted to the jury on August 25, 1975, and verdicts were returned which the trial court

Andrew Wilcoxen, Muskogee, Okl. (Kenneth W. East, Tutra, Okl., on brief), for plaintiff-appellee.

Carl Michael Smith and Robert G. Grove, Oklahoma City, Okl., for defendants-appellants Maxwell Darks and Marvin Olivo.

Gary P. Snow, Holdenville, Okl., for defendant-appellant Agnes Lucas now Wesley.

Before McWILLIAMS, BARRETT and DOYLE, Circuit Judges.

held, on motion for new trial, to be excessive. A new trial was granted and at the second trial the awards were much less.

Darks was the owner of a one-half surface interest in 80 acres which was in tract 1. He owned the entire surface interest in the 80 acres of tract 2.

Olivo was the owner of a surface interest in tract 6, which was 160 acres. The mineral rights as to the Darks and Olivo tracts were owned by restricted Indians (so Darks and Olivo were seeking compensation for the diminution of their surface rights).

The evidence disclosed that the Darks' property here considered was part of a larger cattle ranch. The evidence also showed the land to be primarily suitable for farming and ranching. However, there was a somewhat wooded area and a lake on the property. There was at least a contention that some of the area around the lake was suitable for residential development. Also, on the property was an abandoned oil and gas well and tract 2 was subject to an oil and gas lease.

The Olivo property was also primarily used for range and agriculture, and there was at least some possibility of residential development in the wooded parts of it. The Olivo property was also subject to oil and gas leases and had a pipeline across it. Olivo's testimony was that the new easement, the subject of the present litigation, would increase the pressure in the pipeline and that it might cause some danger.

The first jury award was for Darks, tract 1, $12,000; Darks, tract 2, $32,000; Olivo, tract 6, $48,000. As we have said, these verdicts were vacated and a new trial was granted to Transok. The court held that the verdicts were excessive when considered in the light of the fact that a full range of uses remained to the owners. The motion for new trial of Darks with respect to certain damage issues was denied.

The second jury verdict which was rendered May 21, 1976, made the following awards: Darks, tract 1, $1,000; Darks, tract 2, $2,000; Olivo, tract 6, $5,600.

The appeal of Darks and Olivo seeks review of the court's action in vacating the first verdict and seeks to set aside the second verdict. However, the main thrust of the appeal is that the trial court erred in granting Transok's motion for new trial following the first awards, and that the court erred in certain of its rulings on evidence and discovery in both trials.

Wesley seeks review of the order denying the motion to set aside the judgment which was entered as a result of her acceptance of the check. She claims that she did not understand it and that the court lacked jurisdiction as to her and the other Indian defendants.

Specifically, Olivo seeks reversal on the following grounds:

1. That there is no federal jurisdiction as to him.

2. That the Oklahoma substantive and procedural law applied by the trial court as to the taking of property by eminent domain violated the Constitution of the United States.

3. That the trial court erred in granting a new trial on account of excessiveness of damages and overruling Darks' motion for a new trial.

4. That there was error on the part of the trial court in refusing to permit the presentation of evidence on damages including the value before and after the taking of Olivo's portion of the gas storage formation, and (b) value before and after taking of Olivo's wells and casing to the subsurface formation.

The specific contentions of the defendant-appellant Darks are the same as those raised by Olivo and, in addition, he argues other points such as lack of necessity for the taking under Oklahoma law. He also makes detailed arguments with respect to the trial court's refusal to allow at the second trial evidence as to severance damage and trespass damages to Darks' land prior to the date of taking.

I.

We first consider the argument that the district court did not have jurisdiction

over the Indian defendants because the Secretary of the Interior was not served and was an indispensable party. For this proposition some language contained in *United States v. Oklahoma Gas & Elec. Co.*, 127 F.2d 349, 354–55 (10th Cir. 1942), *aff'd*, 318 U.S. 206, 63 S.Ct. 534, 87 L.Ed. 716 (1943), is relied on. The court in that case did say by way of dicta that the Secretary is an indispensable party. It cited *Minnesota v. United States*, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939), which contains a statement that the United States is an indispensable party to such an action. The Supreme Court did not refer to this issue in affirming the *Oklahoma Gas* decision. In a later case, *Town of Okemah v. United States*, 140 F.2d 963 (10th Cir. 1944), this court referred to the United States as an indispensable party and did not mention the Secretary as being an indispensable party. In accord is Semple, *Oklahoma Indian Land Titles Annot.* § 802 at 546 (1952). It is to be concluded that that one statement in *Oklahoma Gas* is not authority for the proposition that the Secretary is indispensable.

The appellants also rely on the Act of May 27, 1908, § 6, 35 Stat. 312, which authorizes representatives of the Secretary to counsel and advise all allottees of restricted lands and to take such steps as are necessary to protect them or assist said allottees in acquiring and retaining possession of their restricted lands. Another statute, that of August 4, 61 Stat. 731, authorizes the attorneys provided for by the Act to represent Oklahoma Indians before state courts of Oklahoma. This provision does not purport to deal with representation of Indians in federal court and does not state that Indians must be represented by these attorneys.

The further statutory provision relied on is § 3(c) of the Act of August 4, 1947, 61 Stat. 732, which states that no proceeding in which members of the Five Civilized Tribes are parties may be removed to a federal court except upon the recommendation of the Secretary. This, however, falls short of requiring the Secretary to be a party.

We conclude that all necessary parties were served and that the Indian defendants were properly represented. On this issue the trial court found that the government vigorously represented the Indian interests. Appellant Wesley (or Lucas) has not claimed otherwise.

█ Nor do we agree with counsel for the appellants that the approval of the Secretary was a prerequisite to condemnation. There is one statute, Section 11, Act of August 4, 1947, 61 Stat. 734, which provides that no order of the Corporation Commission under the "oil and gas conservation laws of Oklahoma," affecting restricted Indian land shall be valid until submitted to and approved by the Secretary of the Interior. In this case it does not appear that the Secretary refused to approve the order nor does it appear that § 11, *supra* makes approval by the Secretary necessary to this condemnation action.

Certification by the Corporation Commission under the "oil and gas conservation laws," 52 O.S. §§ 81–287.15, is designed to regulate the oil and gas industry. While a certificate is also required for condemnation of underground storage facilities under a different chapter, 52 O.S. § 36.4, formal condemnation proceedings in federal court are necessary before it can have any effect as to Indian land. Similarly, the consent of the Secretary is required in order for a state to acquire the rights of way across allotted lands under 25 U.S.C. §§ 311, 312, 319, 321, 323, but § 357 does not impose such a requirement. *Nicodemus v. Washington Water Power Co.*, 264 F.2d 614 (9th Cir. 1959); *United States v. Oklahoma Gas & Elect. Co., supra.* Undoubtedly Congress considered the safeguards available in federal judicial proceedings to be sufficient so that the permission of the Secretary was not required.

The other points such as the inadequacy of the Oklahoma Corporation Commission Order under 52 O.S. §§ 36.3(b) and 36.4(b) are unfounded. Nor is there merit in the contention that § 357 only authorizes condemnation of the interests of original allottees and not the interest of heirs of allot-

tees. *Oklahoma Gas, supra,* 318 U.S. at 207, 63 S.Ct. 534, *Town of Okemah v. United States,* 140 F.2d 963, 965 (10th Cir. 1944). Nor is the fact that the language in § 1, Act of May 27, 1908, 35 Stat. 312 refers to the exercise of right of eminent domain over allotted lands, thereby precluding the taking of a subsurface facility. Such a reading of the statute would produce a ridiculous result.

## II.

■ Both Darks and Olivo argue that there can be no jurisdiction because subject matter jurisdiction exists only because of 25 U.S.C. § 357, which allows the condemnation of lands allotted in severalty to Indians. Even if the United States court can exercise jurisdiction over the Indians, Darks maintains as does Olivo that there can be no jurisdiction exercised over him.

The appellants rely on *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 130, 16 L.Ed.2d 218 (1966). Particularly they rely on the language in *United Mine Workers* that if the state issues substantially predominate, whether in terms of proof, scope, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice to be tried in state courts. The trial court reasoned that § 357, *supra,* authorized the condemnation of any lands in which restricted Indians held an interest.

The trial court said that even if the surface of the land were considered a separate subject matter under § 357, the court had pendent jurisdiction over the condemnation of Darks' and Olivo's lands. It further stated that it would be a waste of time to dismiss the non-Indian defendants after two years of litigation.

It should be noted that the Indian defendants settled before the trial.

We do not rely solely on the trial court's first theory that § 357 confers federal jurisdiction over non-Indians who hold an interest in land in which allotted Indians also hold an interest.

In *United Mineworkers v. Gibbs, supra,* the Supreme Court said that for pendent jurisdiction to exist, the federal claims must have substance sufficient to confer subject matter jurisdiction on the court. The Court laid down the requirement that the state and federal claims must derive from a common nucleus of operative fact, and the additional test that was used was whether the claims are such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding. It added that pendent jurisdiction may be exercised by the court in a particular case when "Its justification lies in considerations of judicial economy, convenience and fairness to litigants." *Id.* at 726, 86 S.Ct. at 1139.

In *Gibbs* there was no question of different defendants, but subsequent cases from the circuits have extended the *Gibbs* reasoning to pendent jurisdiction over state law claims against defendants over whom there is no independent basis of federal jurisdiction if the claims arose out of the same nucleus of operative fact as the federal claims applicable to another defendant. *See Curtis v. Everette,* 489 F.2d 516 (3rd Cir. 1973), *cert. denied,* 416 U.S. 996, 94 S.Ct. 2409, 40 L.Ed.2d 774; *Almenares v. Wyman,* 453 F.2d 1075 (2d Cir. 1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815; *Leather's Best, Inc. v. S. S. Mormaclynx,* 451 F.2d 800 (2d Cir. 1971); *F. C. Stiles Contracting Co. v. Home Insurance Co.,* 431 F.2d 917 (6th Cir. 1970). *But see Hymer v. Chai,* 407 F.2d 136 (9th Cir. 1969).

In a 1976 case, *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the Supreme Court discussed the subject of pendent party jurisdiction in the context of an action alleging violation of civil rights under 42 U.S.C. § 1983. A county employee there sued her supervisor, the commissioners and the county itself, claiming that her discharge violated her constitutional rights. The problem arose because there was no federal jurisdiction over the county under 28 U.S.C. § 1343(3) because the county was not suable as a "person" under § 1983.

The Court disapproved of adding a completely new party over whom the court

would have no power under the Civil Rights Act. The Court thought that this was an unwarranted extension of the pendent jurisdiction doctrine. At the same time the Court was careful to limit its decision to jurisdiction under § 1343(3) and § 1983, *supra*. The Court said that other alignments of parties and claims might call for a different result, such as with federal torts claims where the grant of jurisdiction is exclusive against the United States, for only in the federal court could all of the claims be tried together.

Cases decided since the *Aldinger* case have construed it somewhat narrowly. *See Ayala v. United States*, 550 F.2d 1196 (9th Cir. 1977); *Long Prairie Packing Co. v. Midwest Emery Freight*, 429 F.Supp. 201 (D.Mass.1977). This attitude is not necessarily justified from a reading of *Aldinger*, which can be read to indicate that there is power to exercise pendent party jurisdiction unless Congress has expressly or impliedly negated such power in a particular jurisdictional context. *See* Comment, 77 Colum.L. Rev. 127 (1977).

The federal claims must, however, be substantial. In our case the claims quite clearly arise out of the same factual nucleus and normally a condemnor would seek to have all interests in the property adjudicated in one action. Furthermore, our case is similar to the test discussed in *Aldinger*; under § 357, there is exclusive jurisdiction in federal court to try the federal claim, whereby there can be a trial of all of the claims only in federal court.

We finally consider whether there was an abuse of discretion in exercising pendent jurisdiction in this case by trying the non-Indian cases after the settlement of the Indian ones.

While there was language in *Gibbs* that if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Nevertheless, later cases seem to be contrary to this dictum. *See Rosado v. Wyman*, 397 U.S. 397, 404, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970), where the Court ruled that mootness as to

the federal question did not deprive a federal court of power to hear pendent state claims. The court said: "Mootness, . . . may not occur until after substantial time and energy have been expended looking toward the resolution of a dispute that plaintiffs were entitled to bring in a federal court." *Id. See Hagans v. Lavine*, 415 U.S. 528, 545–550, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Therefore, the *Gibbs* dictum is not a restriction on the court's power but rather is a guide to the exercise of its discretion. It would seem that the state claim would not have to be dismissed as long as the federal claim is not dismissed for insubstantiality. Stated differently, unless insubstantiality is the situation, the federal court would have the power to decide the pendent claim. *See State of Arizona v. Cook Paint & Varnish Co.*, 541 F.2d 226 (9th Cir. 1976), *cert. denied*, 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977); *Klaus v. Hi-Shear Corp.*, 528 F.2d 225 (9th Cir. 1975); *Kavit v. A. L. Stamm & Co.*, 491 F.2d 1176 (2d Cir. 1974); *Brunswick v. Regent*, 463 F.2d 1205 (5th Cir. 1972); 3A Moore's Federal Practice, ¶ 18.07[1.–3] & n. 41.

Exercise of power over the state claims has been approved despite dismissal of the federal claims where substantial amounts of time and energy have been spent in the case. *See Galella v. Onassis*, 487 F.2d 986 (2d Cir. 1973). In that case a number of motions had been heard and a special master in charge of discovery had been appointed. The motion to dismiss was made on the eve of trial. Retention was upheld. *See also Klaus, supra; Kavit, supra*.

In the case at bar the federal claims are substantial. The complaint had been filed in July 1973, and for over two years the court had heard and decided motions and appointed commissioners to determine just compensation. The federal claims were settled in August 1975, just before trial. Finally, this would be a bad time to dismiss non-Indian claims after four years and two jury trials. It would be a shocking waste of time and money now to require this cause to be relitigated in the state court.

■ We have concluded that the trial court did not err in granting the Transok motion for a new trial because of excessiveness of the verdicts.

The trial court properly instructed the jury as to the proper measure of damages and submitted summaries of the evidence and advised the jury that the verdict as to each tract had to fall within the ranges of just compensation as shown by the summaries submitted. In fact the verdicts turned out to be within the guidelines contained in the summaries. However, the amounts in each instance crowded the outside limit set in the range of figures furnished by the experts. It was because of this that the court ordered a new trial. The judge did so on the basis of this court's decision in *Holmes v. Wack*, 464 F.2d 86 (10th Cir. 1972), in which the breadth of the trial court's discretion to grant or deny a new trial was emphasized. *See also Harris v. Quinones*, 507 F.2d 533 (10th Cir. 1974).

Appellants would have us now hold that the trial court was in error in not offering as an alternative to the motion for new trial a proposal for a remittitur. They say that this was required. We disagree. If a remittitur is offered, the alternative which is, so to speak, threatened is the granting of a new trial. It does not follow from this that every time a new trial is ordered it also must be accompanied by a proposal for remittitur.

A distinction is to be drawn between appellate review of a grant of a new trial and review of denial of a motion for new trial. In the latter, the appellate court may be less likely to reverse than in the former situation. Yet the standard is still abuse of discretion. *See Taylor v. Washington Terminal Co.*, 133 U.S.App.D.C. 110, 409 F.2d 145 (1969), *cert. denied*, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85, where the court said that it would reverse the granting of a new trial for excessive verdict only where the quantum of damages found by the jury was clearly within the maximum limit of a reasonable range.

To the same effect are *Gleason v. Hall*, 555 F.2d 514 (5th Cir. 1977); *Ehret Co. v.*

*Eaton, Yale & Towne, Inc.*, 523 F.2d 280 (7th Cir. 1975); 6A Moore's Federal Practice ¶ 59.05[5].

In the present case the appellants' witnesses testified to a total loss of value as a result of the taking of the easement, and Transok's witnesses indicated no substantial taking and need for compensation at all. The judge in granting the new trial said that both positions were wrong. Considering the very limited taking and considering the fact that the awards approach the high marks, we are unable to see that the trial court abused its discretion in granting the motion for new trial.

## IV.

Finally, we consider whether the trial court erred in its ruling on the reception of evidence and its instructions.

■ The underground area sought to be condemned was 2,500 feet beneath the surface that underlay about 3,640 acres in Hughes County, which property was owned by about 25 owners, according to appellants' estimate. Only a part of this formation was considered in this condemnation action. There are related actions in the state court. We see no shortcoming in the trial court's instructions. It fairly defined the standards to be followed in making the award.

As to the evidence:

■ Appellants offered evidence of the value of the entire formation of the gas storage reservoir. This was apparently on the theory that compensation should amount to a percentage of the total value of the reservoir equal to defendants' percentage of the surface area over the reservoir. Such a formula would constitute a measure based upon the value to Transok rather than the value of the property taken. That the latter is the law in Oklahoma is shown by *McInturff v. Oklahoma Natural Gas Transmission Co.*, 475 P:2d 160 (Okl. 1970). Cases from other states are to the same effect. *Home Gas Co. v. Miles*, 79 Misc.2d 26, 358 N.Y.S.2d 846 (Sup.Ct.1974); *Midwestern Gas Transmission Co. v. Mason*, 31 Ill.2d 340, 201 N.E.2d 379 (1964).

*Olson v. United States*, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1934), is not relevant because here in contrast to *Olson* there is no possibility of the 25 owners combining to operate a storage facility so as to come within *Olson*. *See* 292 U.S. at 257, 54 S.Ct. 704.

 Severance damages were sought based upon diminution in value of the entire ranch. The trial court instructed the jury to disregard this evidence. The court's exclusion of this was justified on the basis that the testimony as to reduction of the value of the entire ranch as a result of this easement was, to say the least, insubstantial. Nor did the trial court abuse its discretion in denying Darks permission to introduce evidence of alleged pretaking trespass.

The judgment of the district court is affirmed.