595 F.2d 546
 71 A.L.R.Fed. 108
 NATIONAL INSURANCE UNDERWRITERS, Appellee,
v.
PIPER AIRCRAFT CORPORATION, Aetna Life & Casualty Company,
United States Aviation Underwriters, Inc., Thomas
Cunningham, and James V. Phelps, Appellants.
 Nos. 77-1506, 77-1507.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted Nov. 16, 1978.
Decided March 26, 1979.
 
 Lee Wills of Kane, Donley & Wills, Colorado Springs, Colo., for appellant, James V. Phelps.
 Submitted on the Briefs by Robert L. McGee, Jr. of Sheldon, Bayer, McLean & Glasman, Denver, Colo., for appellants, Piper Aircraft Corp., Aetna Life & Cas. Co., and United States Aviation Underwriters, Inc.
 William R. Lahey, Denver, Colo. (Paul D. Renner, Denver, Colo., with him on brief), for appellee, Nat. Ins. Underwriters.
 Before SETH, Chief Judge, and BREITENSTEIN and LOGAN, Circuit Judges.
 SETH, Chief Judge.
 
 
 1
 This appeal presents the question as to whether a federal court in a diversity suit may exercise pendent party jurisdiction over plaintiff's $7,000.00 claims against each of several defendants as to whom no independent basis of federal jurisdiction exists.
 
 
 2
 Plaintiff, National Insurance Underwriters, had issued a policy of hull insurance on a Piper airplane which suffered damage in the amount of $12,000.00. Plaintiff issued a check for the loss in the amount of $11,000.00 to Crown Mart, Inc., which was the owner of the aircraft, and a named insured. By the terms of the policy, and otherwise, plaintiff thus became subrogated to whatever cause of action Crown Mart might have which arose from the accident. Aetna was the insurer for Piper, the maker of the plane, and United States Aviation Underwriters, Inc. was the managing claims agent for Aetna, and they both received notice from plaintiff of its subrogated rights. During this period, Crown Mart hired appellant-defendant, James V. Phelps, as its attorney to bring an action against Piper for breach of warranty and product liability. Crown Mart sought to buy back from plaintiff the rights plaintiff held by subrogation. Plaintiff agreed to release its rights to Crown Mart for $7,000.00.
 
 
 3
 Crown Mart then negotiated directly with United States Aviation Underwriters as to its suit against Piper, and Crown Mart agreed to release its cause of action against Piper for $12,223.59. Defendant, Thomas Cunningham, an officer and agent of Crown Mart, provided defendant Phelps, its attorney, with a copy of a Crown Mart check payable to plaintiff in the amount of $7,000.00. Mr. Phelps showed this copy to an agent for United States Aviation Underwriters, who then caused its check in the amount of $12,223.59 in settlement to be issued to Phelps and Crown Mart jointly. Crown Mart executed a release to Piper, and defendant Phelps delivered the $12,223.59 check to Crown Mart. The $7,000.00 check prepared by Crown Mart was never transmitted to plaintiff, and Crown Mart soon filed for bankruptcy.
 
 
 4
 Plaintiff brought this action with jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332(a). In its amended complaint, plaintiff alleged seven Alternative claims for relief. In its First Claim, plaintiff alleged that the Piper airplane was defective and Piper had breached various warranties. Plaintiff prayed for damages of $11,000.00, the amount plaintiff had paid to its insured, Crown Mart.
 
 
 5
 In the Second Claim, plaintiff contended that Aetna was negligent in failing to pay appellee the amount of the subrogated claim, and prayed for $7,000.00 in damages. Plaintiff's Third and Fourth Claims were against Cunningham for $7,000.00 each, but were dismissed during trial.
 
 
 6
 Plaintiff's Fifth Alternative Claim alleged that defendant Phelps was retained to conclude the settlement contract between plaintiff and defendant Aetna, and he failed to so perform. Plaintiff prayed for $7,000.00 in damages. Plaintiff's Sixth Claim, all claims being in the alternative, sounded in tort and alleged that defendant Phelps was grossly negligent in failing to carry out the agreement of the parties, and prayed for $7,000.00 in damages.
 
 
 7
 Plaintiff's Seventh Claim alleged that United States Aviation Underwriters negligently failed to carry out the settlement, and did not pay appellee the amount of the subrogated claim. The prayer was for damages of $11,000.00 on this claim.
 
 
 8
 The district court found that plaintiff had not established the First Claim or cause of action against Piper, and thus did not prove that Piper was subject to liability on the grounds of either sale of a defective product or breach of warranty. The court thus held for Piper on this claim and entered judgment for it. The court concluded that United States Aviation Underwriters acted as agent for Aetna, and also for Piper in the settlement arrangements with Crown Mart. The court concluded that "(t)he negligent acts of all defendants are inextricably connected with each other and plaintiff has established the negligence of all." The court held that Mr. Phelps was also negligent in paying to Crown Mart money belonging to plaintiff. The court ordered that the defendants Piper, Aetna, Phelps, and United States Aviation were jointly and severally liable to appellee National Insurance Underwriters in the amount of $7,000.00.
 
 
 9
 Defendants contend that the district court lacked subject matter jurisdiction. Jurisdiction was sought to be based on diversity of citizenship and the requisite amount in controversy. 28 U.S.C. § 1332(a). While diversity of citizenship between the plaintiff and the defendants is not contested, the defendants do point out that several of the claims of plaintiff were for less than the requisite amount.
 
 
 10
 There is no question that the district court had jurisdiction over the $11,000.00 products liability action asserted against Piper in the First Claim. While defendants would disagree, plaintiff urges that the court also had jurisdiction over the $11,000.00 negligence claim against United States Aviation Underwriters asserted as the Seventh Claim as a claim made in good faith. Wheel Horse Sales, Inc. v. Spence, 566 F.2d 679 (10th Cir.). The complaint only asserts claims in the amount of $7,000.00 against Aetna and Mr. Phelps. Plaintiff, as to these, relies upon the doctrine of pendent jurisdiction. It would serve no purpose to review the well-known standards for the Article III requisites of pendent jurisdiction set forth in United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218, and as further considered as to parties and as to statutory power in Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276. "Pendent jurisdiction" is not treated as such in Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511, but the case is significant as to the problem before us. The Supreme Court in Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274, however, did consider pendent jurisdiction as it related to the inclusion of additional parties in the context of diversity.
 
 
 11
 The Supreme Court in Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276, expressly limited its holding to " 'pendent party' jurisdiction with respect to a claim brought under §§ 1343(3) and 1983." 427 U.S., at 18, 96 S.Ct. at 2422. Thus in each subsequent case involving pendent party jurisdiction, ". . . a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence." 427 U.S., at 18, 96 S.Ct. at 2422. This Circuit in Transok Pipeline Co. v. Darks, 565 F.2d 1150 (10th Cir.), noted that a narrow reading of Aldinger was not necessarily justified. The court stated that Aldinger ". . . can be read to indicate that there is power to exercise pendent party jurisdiction unless Congress expressly or impliedly negated such power in a particular jurisdictional context." The plaintiff in Transok Pipeline brought a federal action for condemnation against certain Indians, and a state cause against non-Indians. Plaintiff there alleged jurisdiction under 25 U.S.C. § 357 which authorized the federal courts to entertain actions to condemn lands allotted in severalty to certain Indians. Jurisdiction over the state law condemnation cause against the non-Indians was based upon pendent jurisdiction. One of the defendant-appellants had an Indian cotenant and Indians held mineral rights on both appellants' land. Jurisdiction over the non-Indians was upheld in Transok Pipeline under the doctrine of pendent party jurisdiction. The federal claims were substantial; they arose out of a common nucleus of operative fact with the nonfederal claims, and importantly under section 357 Only the federal court could decide all of the issues. In Transok Pipeline we did not place reliance on the theory that non-Indian claims to the same property could be litigated under the wording of 25 U.S.C. § 357. Instead we said, after considering Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276:
 
 
 12
 ". . . In our case the claims quite clearly arise out of the same factual nucleus and normally a condemnor would seek to have all interests in the property adjudicated in one action. Furthermore, our case is similar to the test discussed in Aldinger; under § 357, there is exclusive jurisdiction in federal court to try the federal claim, whereby there can be a trial of all of the claims only in federal court."
 
 
 13
 See also Pipeliners Local Union 798 v. Ellerd, 503 F.2d 1193 (10th Cir.).
 
 
 14
 In Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274, the Supreme Court applied an Aldinger analysis to the diversity statute. The plaintiff in Owen Equipment brought a diversity action for wrongful death against Omaha Public Power District (OPPD). Plaintiff Kroger was a citizen of Iowa, and OPPD was a Nebraska corporation. OPPD filed a third party complaint pursuant to Fed.R.Civ.P. 14(a) alleging that the negligence of defendant, Owen Equipment & Erection Company (Owen), caused the wrongful death. Defendant OPPD then moved for summary judgment. Plaintiff requested and obtained leave to file an amended complaint. In that complaint she alleged a state cause of action in negligence against Owen as an additional defendant. She further alleged that Owen was a Nebraska corporation with its principal place of business in Nebraska. The court then granted OPPD's motion for summary judgment. The case went to trial between Kroger and Owen. During the trial it was disclosed that Owen's principal place of business was in Iowa, not Nebraska. Since Kroger and Owen were both citizens of Iowa, Owen moved to dismiss the diversity action for lack of jurisdiction. The court denied the motion. The jury rendered a verdict for plaintiff Kroger, and the court entered judgment for plaintiff. The Court of Appeals affirmed. 558 F.2d 417 (8th Cir.). The Supreme Court reversed, holding that the trial court did not have jurisdiction. The Court then stated in Owen Equipment that a district court must analyze the question of federal jurisdiction in two steps:
 
 
 15
 "Constitutional power is merely the first hurdle that must be overcome in determining that a federal court has jurisdiction over a particular controversy. For the jurisdiction of the federal courts is limited not only by the provisions of Art. III of the Constitution but by Acts of Congress. (Citations omitted).
 
 
 16
 "The Aldinger and Zahn cases thus make clear that a finding that federal and nonfederal claims arise from a 'common nucleus of operative fact,' the test of Gibbs, does not end the inquiry into whether a federal court has power to hear the nonfederal claims along with the federal ones. Beyond this constitutional minimum, there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether 'Congress in (that statute) has . . . expressly or by implication negated' the exercise of jurisdiction over the particular nonfederal claim."
 
 
 17
 The Supreme Court then examined the diversity statute, and concluded that there was a ". . . congressional mandate that diversity jurisdiction is not to be available when any plaintiff is a citizen of the same State as any defendant." Since plaintiff and defendant Owen were both citizens of Iowa, "the 'matter in controversy' could not be 'between . . . citizens of different States.' " The Supreme Court thus held that the action against Owen could not be supported by the doctrine of "ancillary" jurisdiction. The court said in Owen ". . . in determining whether jurisdiction over a nonfederal claim exists, the context in which the nonfederal claim is asserted is crucial," citing Aldinger; and further said this plaintiff's claim against Owen was not an ancillary and dependent claim, but was a "new and independent one." The Court in Owen Equipment stated:
 
 
 18
 "Second, the nonfederal claim here was asserted by the plaintiff, who voluntarily chose to bring suit upon a state-law claim in a federal court. By contrast, ancillary jurisdiction typically involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court.
 
 
 19
 ". . . But neither the convenience of litigants nor considerations of judicial economy can suffice to justify extension of the doctrine of ancillary jurisdiction to a plaintiff's cause of action against a citizen of the same State in a diversity case. Congress has established the basic rule that diversity jurisdiction exists under 28 U.S.C. § 1332 only when there is complete diversity of citizenship . . . To allow the requirement of complete diversity to be circumvented as it was in this case would simply flout the congressional command."
 
 
 20
 If we assume, but do not decide, that the Gibbs test is satisfied, and that the trial court had one constitutional "case" before it, there still remains the question whether Congress has expressly or impliedly negated pendent party jurisdiction in the language or legislative history of 28 U.S.C. § 1332. We considered the matter in Transok Pipeline Co. v. Darks,565 F.2d 1150 (10th Cir.), in a somewhat different context, as described above. The Supreme Court thereafter decided Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274. The diversity statute states that "the matter in controversy exceeds . . . $10,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). It thus sets forth two obvious requirements for the existence of diversity jurisdiction. Congress, in enacting "amount in controversy" minimums, with the changes therein on reenactments over the years, has demonstrated its view of the importance of these limits. As the Court said in Owen Equipment, referring to the reenactments of the citizenship requirement, ". . . this subsequent history clearly demonstrates a congressional mandate that diversity jurisdiction is not to be available when any plaintiff is a citizen of the same State as any defendant." Here, this "subsequent history" of reenactment as to the dollar amount must lead us to the same conclusion. Thus, under Owen Equipment, plaintiff's claims against these defendants, for amounts less than $10,000.00, cannot be supported jurisdictionally by the pendent jurisdiction doctrine.
 
 
 21
 In Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511, the Supreme Court dismissed the claims of class members who did not have claims exceeding $10,000.00. Since the class action claims by definition contained common issues of law and fact (Fed.R.Civ.P. 23(b)(3)), certain plaintiffs had claims which were arguably pendent to other claims exceeding the stated amount. Even though these plaintiffs came into court voluntarily, the district court dismissed their claims; and the Supreme Court in Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511, said:
 
 
 22
 ". . . Congress has provided that suits between citizens of different states are maintainable in the district courts only if the 'matter in controversy' exceeds the statutory minimum, now set at $10,000."
 
 
 23
 In the case before us, plaintiff pleaded $7,000.00 claims against defendant Aetna and against defendant Phelps, and now asserts that these claims are pendent to other claim or claims against other defendants. Aetna and Mr. Phelps were brought into federal court involuntarily to defend claims which do not satisfy the jurisdictional prerequisite. If the court must dismiss voluntary plaintiffs whose claims do not exceed $10,000.00, as in Zahn, this court must also dismiss plaintiff's $7,000.00 cause against these two defendants.
 
 
 24
 The Court in Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274, rigidly construed the diversity amount as a negation by Congress of extended jurisdiction. If each plaintiff must be of diverse citizenship from each defendant, the plaintiff here must also have a claim in excess of $10,000.00 against each defendant. Just as congressional intent would be circumvented by allowing a plaintiff to bring suit against a nondiverse impleaded defendant, the intent is circumvented by allowing a plaintiff to bring one diversity claim in excess of the minimum amount and join several other defendants by asserting $7,000.00 claims.
 
 
 25
 This is not a situation where the plaintiff can only bring all of his claims in federal court because of an exclusive grant of jurisdiction, as in Transok Pipeline Co. v. Darks, 565 F.2d 1150 (10th Cir.); Pearce v. United States, 450 F.Supp. 613 (D.Kan.). See Ayala v. United States, 550 F.2d 1196 (9th Cir.). Thus, one of the stronger arguments for allowing pendent party jurisdiction is not available here. " '(T)he efficiency plaintiff seeks so avidly is available without question in the state courts' ". Kenrose Mfg. Co., Inc. v. Fred Whitaker Co., Inc., 512 F.2d 890 (4th Cir.), quoted in Owen Equipment, 437 U.S. at 376, 98 S.Ct. at 2404. Since Congress in 28 U.S.C. § 1332(a) negated jurisdiction as to parties against whom plaintiff had a claim insufficient in amount, this court must hold that the district court did not have the power to exercise pendent party jurisdiction over defendants Aetna and Mr. Phelps.
 
 
 26
 Thus jurisdiction over the $7,000.00 claims against Aetna and Mr. Phelps cannot rest on the doctrine of pendent party jurisdiction.
 
 
 27
 The defendants also contend that the district court misapplied Colorado law. The court below concluded that:
 
 
 28
 "The action of an insurance company will not be barred when a tortfeasor (or its insurer) has notice of the subrogated rights of the insurance company and nonetheless pays and obtains a 'release' from the insured. (Citations omitted). The insurer of a tortfeasor has an affirmative duty to protect the subrogation interest, since the wrongdoer will remain liable to the subrogated party if payment is made for an invalid release. (Citations omitted)." (Memorandum opinion and order p. 4).
 
 
 29
 The court held that a breach of this "affirmative duty" would support an action for negligence by plaintiff. We consider this point as to all appellants, but with special reference to the Seventh Claim of plaintiff, and insofar as judgment was entered against Piper on negligence in settlement. Appellants argue that there is no such "affirmative duty" under Colorado law, and even if there is, it would not support an action for negligence.
 
 
 30
 The Colorado courts have not addressed the question of whether the failure to protect a known subrogation interest would support an action for negligence. In fact, we are unable to find any state which has allowed such an action. The courts hold instead that where a release is obtained from the insured with knowledge that the latter has already been indemnified by the insurer, such release does not necessarily bar the right of subrogation of the insurer. 16 Couch, Insurance 2d § 61:197; 6A Appleman, Insurance Law and Practice § 4092; 92 A.L.R.2d 135. This is the typical solution, and apparently the only "remedy" afforded in such a situation. It is one thing to hold that the release executed under such circumstances is invalid as to the insurer, but quite another to rule that a breach of its "duty" to protect a subrogation interest would support an action for negligence. The Colorado courts have not gone so far as to allow such a negligence action. Also there is no support from other jurisdictions for such a result, and we must hold that there would be no such cause of action provided in the Colorado courts. Thus the trial court's holding in the absence of state decisions will not be followed under our doctrine set forth in Brunswick Corp. v. J & P, Inc., 424 F.2d 100 (10th Cir.), in the cases cited therein, and repeated in many cases thereafter.
 
 
 31
 REVERSED AND REMANDED.