**F. C. STILES CONTRACTING COM-PANY, Inc., Plaintiff-Appellee,**

v.

The **HOME INSURANCE COMPANY**, a corporation, **American Employers Insurance Company**, a corporation, and **National Union Fire Insurance Company**, a corporation, Defendants-Appellants.

No. 20117.

United States Court of Appeals,
Sixth Circuit.

Sept. 18, 1970.

Laurence D. Smith, Grand Rapids, Mich. (Schmidt, Smith & Howlett, Grand Rapids, Mich., on the brief), for appellants.

Roger M. Clark, Grand Rapids, Mich. (Harold S. Sawyer, Warner, Norcross & Judd, Grand Rapids, Mich., on the brief), for appellee.

Before EDWARDS, PECK and BROOKS, Circuit Judges.

BROOKS, Circuit Judge.

Plaintiff-appellee, F. C. Stiles Contracting Company, brought this diversity action to recover $24,030.22 on three separate but identical value reporting fire insurance policies [1] issued by defendants-appellants, Home Insurance Company, American Employers Insurance Company, and National Union Fire Insurance Company. When the policies were issued, by their terms it was agreed that Home Insurance would assume fifty per cent of any insurable loss and the other two companies would assume twenty-five per cent each. Thus, in this action the claim against Home Insurance is for $12,015.11 and the claim against American Employers and National Union is for $6,007.56 each. All three insurance companies were represented by the same agent.

The principal issue involved is whether the agent of the companies could orally extend insurance coverage for certain of plaintiff's property stored at a new location when it was not one of the four locations specifically named in plaintiff's value reporting policies.

It appears that plaintiff was using four separate warehouses in which it stored building materials and these materials were insured under the three policies in question. In March, 1966, plaintiff began storing materials at a fifth location and obtained the regular kind of ordinary fire insurance with stated coverage rather than insurance of the value reporting type. This ordinary fire insurance was procured through the same agent who had issued the value reporting policies. As more materials were stored at the new location, plaintiff would inform the agent and secure additional ordinary insurance. By June, plaintiff had acquired three ordinary fire insurance policies on materials kept at the new location with coverage totalling $26,500.

In the latter part of June, plaintiff again notified the agent that more material was to be stored at the new location which would exceed the ordinary insurance coverage and that the value of the material could easily accrue at a rapid rate up to $30,000 over and above existing coverage. After some discussion concerning the possibility that the value and amount of the property at the new location would fluctuate and the desirability of insuring this type of property with a value reporting system, the agent assured plaintiff that "he would take care of it" under the value reporting policies. The value reporting policies under which plaintiff was covered required that new locations shall be added by written endorsement when the value of materials at a new location exceeded a $10,000 blanket coverage provision.

In July, 1966, the property stored at the new location was destroyed by fire. Defendants refused to satisfy plaintiff's claim, over and above the stated coverage of the ordinary insurance, on the grounds that their agent lacked authority to bind them for additional coverage under the value reporting policies. Defendants further contend that even if the agent had the requisite authority to bind them, the monthly value report submitted by the plaintiff was

---

1. Under a value reporting insurance policy the insured reports at the end of each month the value of his inventory at each of the storage areas specified in the policy. At the end of the year his premium is computed on the basis of the cash value of the materials subject to risk. This is in contrast to ordinary fire insurance where the amount of the premium is based on the stated coverage of the policy irrespective of the actual value of the material subject to risk.

filed after the fire and, therefore, under the terms of the policies, could not be used to determine the value of the property destroyed.

■ The District Court made findings of fact from uncontradicted testimony and concluded that the agent possessed the necessary authority to endorse the new location on the policy, and these findings are supported by the record. Although initially only an oral endorsement was given by the agent, if he had the authority to give written endorsements on policies as to new locations, the oral agreement to endorse would be sufficiently binding, Kotwicki v. Thuringia Insurance Company, 134 Mich. 82, 95 N.W. 976 (1903); see also, Cummings v. National Fire Insurance Company of Hartford, Connecticut, 251 Mich. 105 (1930) at 107, 231 N.W. 61.

Contrary to defendants' position that there was no waiver or that they are not estopped from denying liability, the District Court's finding that the agent had the required authority (either express, implied or apparent) makes it unnecessary to discuss the alternative theory of estoppel or waiver for imposing liability on a principal for the conduct of an alleged agent. Cappaert v. Emmco Insurance Company, 304 Mich. 130, 7 N.W.2d 244 (1943); see also, Henne v. Glens Falls Insurance Company, 245 Mich. 378 (1929) at 384, 222 N.W. 731 where the alternative theories are discussed, but see syllabus 3 of *Henne* which gives the incorrect impression that the theories are dependent one upon another, that is, if the agent lacks authority (express, implied or apparent) liability cannot be imposed upon the theory of estoppel.

■ Defendants also argue that the value report filed by plaintiff in July for the month of June is inadmissible in ascertaining the amount of damage done by the fire, because it was filed subsequent to the fire and the policy requires that the last report prior to a fire be used in determining damages. Defendants maintain that plaintiff was storing materials in the new location which were to be covered by the value reporting policies in the latter part of May. This would require the May report filed in June to list the new location and the inventory on hand. However, the first report to list the new location was the June report filed in July. The District Court found that the materials in the new location during May were covered under the ordinary fire insurance and that coverage under the value reporting policies did not begin until June. Thus, a monthly report for the new location was not necessary until the end of July, after the fire. As the report filed in July was the only report filed under the value reporting policies for the new location, the District Court correctly concluded that this postfire report could be used in assessing the value of the property destroyed by the fire.

■ One remaining issue requires discussion. Defendants, American Employers Insurance and National Union Fire Insurance, moved to dismiss the action as against them for lack of jurisdiction because the claims against them ($6,000) did not meet the "amount in controversy" requirement, 28 U.S.C. § 1332. However, in the present controversy the required jurisdictional amount is satisfied against Home Insurance. Thus, the rationale used in pendent jurisdiction cases, notably United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), is applicable by analogy to the present situation. This would allow a plaintiff to adjudicate in a single federal forum a claim against a diverse defendant which does not meet the necessary jurisdictional amount if it is properly joined with a claim against another defendant which meets all the necessary jurisdictional requirements, provided that both claims are part of the same controversy. See, Beautytuft, Inc., et al. v. Factory Insurance Association, et al., 431 F.2d 1122 (6th Cir. Decided September 2, 1970); Stone v. Stone, 405 F.2d 94 (4th Cir. 1968); Jacobson v. Atlantic City Hospital, 392 F.2d 149 (3rd

Cir. 1968). The circumstances out of which this controversy arose clearly conform to the "nucleus of operative facts" required for a federal court to exercise pendent jurisdiction over a claim otherwise not cognizable in federal court. More importantly, as the District Court pointed out, the possibility of multiple litigation and conflicting decisions runs contrary to the policy of judicial economy and fairness to litigants. Therefore, the better procedure was to permit plaintiff in this case to adjudicate his entire lawsuit in one action in the federal court.

Affirmed.