**Donald G. PEARCE, Plaintiff,**

v.

**UNITED STATES of America and Shawnee Mission Medical Center, Defendants.**

Civ. A. No. 77–2261.

United States District Court, D. Kansas.

May 9, 1978.

Frank D. Menghini, J. Nick Badgerow, of McAnany, Van Cleave & Phillips, Kansas City, Kan., for plaintiff.

James P. Buchele, U. S. Atty., Vernon E. Lewis, Asst. U. S. Atty., Kansas City, Kan., for United States.

---

Kenneth E. Holm, of Boddington & Brown, Kansas City, Kan., for Shawnee Mission Med. Center.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

This case presents a complex question mentioned but not answered by the Supreme Court in *Aldinger v. Howard*, 427 U.S. 1, 18, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976): in an action properly filed in federal court under the Federal Tort Claims Act, does the doctrine of pendent jurisdiction give the court power to hear plaintiff's claim against an additional, private defendant, as to whom no independent basis of jurisdiction exists.

## I

Plaintiff, a citizen of Kansas, was involved in an automobile accident on May 19, 1975, as a result of which he suffered numerous injuries, including a dislocated hip and fractured pelvis. Shortly after the accident, plaintiff was admitted to the Shawnee Mission Medical Center (SMMC) in Shawnee Mission, Kansas. The parties agree that SMMC is a citizen of Kansas. The complaint alleges that plaintiff remained at SMMC for over three hours without receiving any treatment for his injuries. Plaintiff was then transferred to the "VA Hospital" in Kansas City, Missouri, where he allegedly remained for over fifteen hours before receiving any treatment. The "VA Hospital" is operated by the Veterans Administration, an agency of the federal government which exists pursuant to 38 U.S.C. § 201 *et seq.* Plaintiff contends that both hospitals were negligent in failing to render prompt treatment, and asks for damages for his suffering during the hours he was awaiting treatment and for the aggravation of his existing injuries which occurred due to the hospitals' failure to take proper corrective action.

1. SMMC also contends that plaintiff's complaint should be dismissed on a statute of limitations theory. The court is of the opinion that this issue involves questions of fact and is

Plaintiff's claim against the United States is brought under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* Federal district courts have *exclusive* jurisdiction over claims based on the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Since plaintiff and SMMC are both citizens of Kansas, diversity of citizenship is lacking and there is no independent basis of federal jurisdiction supporting plaintiff's claim against SMMC. Plaintiff nonetheless contends that this court has jurisdiction over plaintiff's claim against SMMC under the doctrine of pendent jurisdiction.

The case is before the court upon SMMC's motion to dismiss plaintiff's claim against it due to lack of subject matter jurisdiction.[1] Both plaintiff and the United States vigorously oppose this motion.

## II

The landmark case which established the modern definition of *pendent jurisdiction* is *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), where the Court stated:

"Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . . ,' U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. . . . The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

therefore premature. SMMC may raise this issue again after the close of discovery upon an appropriate summary judgment motion, or at trial.

"That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." 383 U.S. at 725–726, 86 S.Ct. at 1138. (citations and footnotes omitted, emphasis in original).

*Gibbs* dealt with the assertion of a state-law claim against a defendant already present in federal court. Neither *Gibbs* nor its lineal ancestors [2] dealt with the question of whether pendent jurisdiction could be extended to include *parties* as well as *claims*.

Distinguishable from but related to *pendent jurisdiction* is the concept of *ancillary jurisdiction*.[3] The latter doctrine is used primarily to allow impleader in diversity cases and justify the exercise of jurisdiction over third-party claims regardless of the citizenship of the third-party defendant.[4] In *Aldinger*, the Supreme Court said:

"The doctrine of ancillary jurisdiction developed in the foregoing cases is bottomed on the notion that since federal jurisdiction in the principal suit effectively controls the property or fund under dispute, other claimants thereto should be allowed to intervene in order to protect their interests, without regard to jurisdiction." 427 U.S. at 11, 96 S.Ct. at 2419. (footnote omitted).

Somewhere between the concepts of pendent and ancillary jurisdiction falls a third concept, which for lack of a better name has been termed *pendent party jurisdiction*.[5] The question posed is this: when, if ever, may a plaintiff who is in federal court to pursue a federal claim against defendant "A", also assert in federal court a state claim against defendant "B", as to whom no independent federal cause of action exists, simply because plaintiff's state claim against defendant "B" is factually related to his federal claim against defendant "A"? In other words, can pendent jurisdiction be extended to confer jurisdiction over plaintiff's claim against a completely new party, as to whom no independent basis of federal jurisdiction exists?

As mentioned earlier, *Gibbs* involved only pendent claims, not pendent parties. The broad language of *Gibbs*, however, gave the concept of *pendent party jurisdiction* its birth, and between *Gibbs* and *Aldinger* it won considerable acceptance in the courts of appeals. See *Almenares v. Wyman*, 453 F.2d 1075, 1083–1085 (2nd Cir. 1971); *Leather's Best, Inc. v. S. S. Mormaclynx*, 451 F.2d 800, 809–810 (2nd Cir. 1971); *Nelson v. Keefer*, 451 F.2d 289, 291 (3rd Cir. 1971); *Astro-Honor, Inc. v. Grosset & Dunlap, Inc.*, 441 F.2d 627 (2nd Cir. 1971); *F. C. Stiles Contracting Co. v. Home Insurance Co.*, 431 F.2d 917, 919–920 (6th Cir. 1970);

**2.** To trace the history of pendent jurisdiction see the discussion in *Aldinger, supra*, 427 U.S. at 6–9, 96 S.Ct. 2413; and also *Osborn v. Bank of the United States*, 9 Wheat 738, 6 L.Ed. 204 (1824); *Siler v. Louisville & Nashville R. Co.*, 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909); *Moore v. N. Y. Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926); and *Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933).

**3.** One court has offered the following distinction between *ancillary* and *pendent* jurisdiction:

"The doctrine of pendent jurisdiction refers to the resolution of state and federal claims in one action. . . . . Ancillary jurisdiction is, as its name implies, the exercise of jurisdiction over certain peripheral aspects of a

controversy that by themselves would not be cognizable in federal court." . *Bay Guardian Co. v. Chronicle Pub. Co.*, 340 F.Supp. 76, 79 (N.D.Cal.1972).

See also C. Wright, *Law of Federal Courts*, § 19 n. 27 (West Pub. Third Ed. 1976).

**4.** To trace the history of ancillary jurisdiction see the discussion in *Aldinger, supra*, 427 U.S. at 9–12, 96 S.Ct. 2413; and *Freeman v. Howe*, 24 How. 450, 16 L.Ed. 749 (1861); *Stewart v. Dunham*, 115 U.S. 61, 5 S.Ct. 1163, 29 L.Ed. 329 (1885); *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921); and *Fulton Bank v. Hozier*, 267 U.S. 276, 45 S.Ct. 261, 69 L.Ed. 609 (1925).

**5.** See, *e. g., Aldinger, supra*, 427 U.S. at 10, 96 S.Ct. 2413.

*Beautytuft, Inc. v. Factory Ins. Assn.*, 431 F.2d 1122, 1128 (6th Cir. 1970); *Hatridge v. Aetna Casualty & Surety Co.*, 415 F.2d 809, 816–817 (8th Cir. 1969); *Stone v. Stone*, 405 F.2d 94 (4th Cir. 1968); *Connecticut General Life Ins. Co. v. Craton*, 405 F.2d 41, 48 (5th Cir. 1968); *Jacobson v. Atlantic City Hospital*, 392 F.2d 149, 153–154 (3rd Cir. 1968); See also other cases cited in *Moor v. County of Alameda*, 411 U.S. 693, 713, n. 29, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); and in C. Wright, *Law of Federal Courts*, § 19, n. 33 (West Pub., Third Ed. 1976).

The one court which has consistently rejected *pendent party jurisdiction* is the Ninth Circuit. See *Williams v. United States*, 405 F.2d 951 (9th Cir. 1969); *Hymer v. Chai*, 407 F.2d 136 (9th Cir. 1969); *Moor v. Madigan*, 458 F.2d 1217 (9th Cir. 1972); *Aldinger v. Howard*, 513 F.2d 1257 (9th Cir. 1975); *Ayala v. United States*, 550 F.2d 1196 (9th Cir. 1977).[6] However, that court was in such a minority that in *Aldinger* the Ninth Circuit noted the "widespread rejection" of its position by the other courts of appeals. 513 F.2d at 1261. In the appeal of the *Moor* decision the Supreme Court declined to discuss the jurisdictional issue and affirmed on the ground that the district judge did not abuse his discretion in refusing to exercise pendent jurisdiction (without deciding whether such jurisdiction existed). *Moor v. County of Alameda*, 411 U.S. 693, 715, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). In *Aldinger*, however, the High Court finally came to grips with a *pendent party jurisdiction* problem.

The plaintiff in *Aldinger* worked for the County Treasurer in Spokane County, Washington. She was informed that she had been terminated, despite "excellent" job performance, because she was allegedly "living with her boyfriend." She brought a civil rights action under 42 U.S.C. § 1983 against the County Treasurer and other individuals. Since a county is not a "person" within the meaning of § 1983, plaintiff did not have a federal claim against the county. See *Moor v. County of Alameda, supra*; and *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). Nonetheless, plaintiff had asked the district court to exercise *pendent party jurisdiction* over the state claim against the county since it was so closely related to her § 1983 claims. The district court dismissed the claim against the county and the Ninth Circuit affirmed. The Supreme Court, after tracing the history of *pendent jurisdiction* and *ancillary jurisdiction*, first made the point that *pendent party jurisdiction* is quite different from *pendent jurisdiction*:

"From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to implead an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant 'derive from a common nucleus of operative fact.' True, the same considerations of judicial economy would be served insofar as plaintiff's claims 'are such that he would ordinarily be expected to try them all in one judicial proceeding . . . .' But the addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress. We think there is much sense in the observation of Judge Sobeloff, writing for the Court of Appeals in *Kenrose Mfg. Co. v. Fred Whitaker Co.*, 512 F.2d 890, 894 (4th Cir. 1972):

'The value of efficiency in the disposition of lawsuits by avoiding multiplicity may be readily conceded, but that is not the only consideration a federal

---

**6.** *Williams* and *Ayala* both dealt with attempts to join state claims with FTCA claims.

court should take into account in assessing the presence or absence of jurisdiction. Especially is this true where, as here, the efficiency plaintiff seeks so avidly is available without question in the state courts'."

427 U.S. at 14–15, 96 S.Ct. at 2420.

The Court went on to hold that *pendent party jurisdiction* could not be invoked to allow a federal district court to try a state claim against a county simultaneously with § 1983 claims against individuals (in the absence of diversity of citizenship between plaintiff and the county). The Court refused to establish any concrete standard to determine when, if ever, the exercise of *pendent party jurisdiction* would be proper, but indicated that a (if not *the*) crucial factor is the Congressional intent expressed in the statute upon which plaintiff's federal claim is based. In order to fully comprehend *Aldinger*, it is necessary to quote extensively from the Court's decisional language:

"[T]he question whether jurisdiction over the instant lawsuit extends not only to a related state-law claim, but to the defendant against whom that claim is made, turns initially, not on the general contours of the language in Art. III, *i. e.*, 'Cases . . . arising under,' but upon the deductions which may be drawn from congressional statutes as to whether Congress wanted to grant this sort of jurisdiction to federal courts. Parties such as counties, whom Congress *excluded* from liability in § 1983, and therefore by reference in the grant of jurisdiction under § 1343(3), can argue with a great deal of force that the scope of that 'civil action' over which the district courts have been given statutory jurisdiction should not be so broadly read as to bring them *back* within that power merely because the facts also give rise to an ordinary civil action against them under state law. In short, as against a plaintiff's claim of *additional* power over a 'pendent party,' the reach of the statute conferring jurisdiction should be construed in light of the scope of the cause of action as to which federal judicial power *has* been extended by Congress.

"Resolution of a claim of pendent-party jurisdiction, therefore, calls for careful attention to the relevant statutory language. As we have indicated, we think a fair reading of the language used in § 1343, together with the scope of § 1983, requires a holding that the joinder of a municipal corporation, like the county here, for purposes of asserting a state-law claim not within federal diversity jurisdiction, is without the statutory jurisdiction of the district court.

"There are, of course, many variations in the language which Congress has employed to confer jurisdiction upon the federal courts, and we decide here only the issue of so-called 'pendent party' jurisdiction with respect to a claim brought under §§ 1343(3) and 1983. Other statutory grants and other alignments of parties and claims might call for a different result. When the grant of jurisdiction to a federal court is exclusive, for example, as in the prosecution of tort claims against the United States under 28 U.S.C. § 1346, the argument of judicial economy and convenience can be coupled with the additional argument that *only* in a federal court may all of the claims be tried together. As we indicated at the outset of this opinion, the question of pendent-party jurisdiction is 'subtle and complex,' and we believe that it would be as unwise as it would be unnecessary to lay down any sweeping pronouncement upon the existence or exercise of such jurisdiction. Two observations suffice for the disposition of the type of case before us. If the new party sought to be impleaded is not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state-law claim. Before it can be concluded that such jurisdiction exists, a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence." 427 U.S. at

16–18, 96 S.Ct. at 2421. (footnotes omitted, emphasis in original).

Less than a year after the Supreme Court's decision in *Aldinger*, the Ninth Circuit had an opportunity to re-examine its position in *Ayala, supra*, but remained steadfast in its belief that *any* exercise of *pendent party jurisdiction* is unconstitutional. The Ninth Circuit was unimpressed by *Aldinger's* reference in dicta to the FTCA as the type of situation in which exercise of *pendent party jurisdiction* might be permissible. See 550 F.2d at 1200.

The Tenth Circuit, however, has expressed quite a different view in the case of *Transok Pipeline Co. v. Darks*, 565 F.2d 1150 (1977). *Transok* was a condemnation suit in which federal jurisdiction was based upon 25 U.S.C. § 357, which authorizes the condemnation of lands allotted in severalty to Indians in the same manner as lands owned in fee. Two defendants who were non-Indians contended that the statute conferred no jurisdiction over claims against them. After reviewing *Gibbs* and *Aldinger*, the Tenth Circuit stated:

"Cases decided since the *Aldinger* case have construed it somewhat narrowly. See *Ayala v. United States*, 550 F.2d 1196 (9th Cir. 1977); *Long Prairie Packing Co. v. Midwest Emery Freight*, 429 F.Supp. 201 (D.Mass.1977). This attitude is not necessarily justified from a reading of *Aldinger*, which can be read to indicate that there is power to exercise pendent party jurisdiction unless Congress has expressly or impliedly negated such power in a particular jurisdictional context. See Comment, 77 Colum.L.Rev. 127 (1977).

"The federal claims must, however, be substantial. In our case the claims quite clearly arise out of the same factual nucleus and normally a condemnor would seek to have all interests in the property adjudicated in one action. Furthermore, our case is similar to the test discussed in *Aldinger*; under § 357, there is exclusive jurisdiction in federal court to try the federal claim, whereby there can be a trial of all of the claims only in federal court." 565 F.2d at 1155.[7]

### III

■ We return at last to the case at hand to attempt to apply what we have learned from the authorities discussed herein. Our first task is to determine whether "Art. III permits" the assertion of jurisdiction over plaintiff's claim against SMMC. *Aldinger* certainly did not decide that the exercise of *pendent party jurisdiction* is unconstitutional in all circumstances. The Tenth Circuit in *Transok* has clearly indicated its belief that the exercise of *pendent party jurisdiction* is constitutional and can be exercised absent evidence of Congressional intent to the contrary. This court is duty-bound to follow the law of this circuit. Accordingly, we reject the Ninth Circuit cases and hold that the exercise of *pendent party jurisdiction* may be constitutional under some circumstances.

■ The only remaining constitutional question is whether the two claims which plaintiff seeks to join comprise but one "constitutional case" within the test established in *Gibbs*. The alleged acts of the defendants in failing to render proper treatment to plaintiff are factually interwoven, contributed to the same injuries, and clearly are of a character that plaintiff would ordinarily (absent a jurisdictional bar) be expected to try them in one judicial proceeding.

Having concluded that Art. III does not prohibit the court from hearing plaintiff's claim against SMMC, we must now scrutinize the FTCA for evidence that Congress expressly or implicitly intended to forbid *pendent party jurisdiction* in cases brought under the FTCA. The statute itself certainly provides no evidence of such negative intent, merely providing that the United States shall be liable "*in the same manner and to the same extent as a private individ-*

---

7. For an example of a federal district court which has chosen to apply *Aldinger* in a manner more consistent with the Tenth Circuit's view see *Aldamuy v. Pirro*, 436 F.Supp. 1005 (N.D.N.Y.1977).

ual under like circumstances." 28 U.S.C. § 2674. If anything, this language could be construed as *encouraging* joinder of pendent state claims against other individuals. In *Aldinger*, the statute (§ 1983) upon which the plaintiff's federal claim was based provided for a specific exemption from liability for the pendent party (a county) sought to be brought into the action. Not only does the FTCA not provide a similar exemption, it bases the liability of the United States upon the identical state law upon which plaintiff's claim against the pendent party (SMMC) is based.

There are cases which have refused to allow joinder of private defendants with the United States in actions under the FTCA. See *Sappington v. Prencipe*, 87 F.Supp. 357 (D.D.C.1948); *Prechtl v. United States*, 84 F.Supp. 889 (W.D.N.Y.1949); *Donovan v. McKenna*, 80 F.Supp. 690 (D.Mass. 1948); *Drummond v. United States*, 78 F.Supp. 730 (E.D.Va.1948); *Uarte v. United States*, 7 F.R.D. 705 (S.D.Cal.1948). These cases were apparently based on the rationale that statutes waiving sovereign immunity are to be strictly construed. The Supreme Court rejected similar arguments in *United States v. Yellow Cab Co.*, 340 U.S. 543, 71 S.Ct. 699, 95 L.Ed. 523 (1951), where it was held that the United States could be sued for contribution and impleaded as a third-party defendant under the FTCA.[8] *Yellow Cab* did not deal with joinder of defendants, but a logical reading of the

opinion leads to the inevitable conclusion that joinder as well as impleader is permissible. One commentator suggests that the Supreme Court "by implication" in *Yellow Cab* decided that joinder of defendants with the United States in an FTCA action is permissible, and notes that "There has been remarkably little litigation on this question since the *Yellow Cab* decision." 7 Wright & Miller, *Federal Practice and Procedure* § 1658 (West Pub. 1972).[9]

■ We conclude that Congress has not expressly or impliedly forbidden the exercise of *pendent party jurisdiction* in an action brought under the FTCA. Since neither the Constitution nor the FTCA prohibits it, we further conclude that it is *permissible* for this court to entertain plaintiff's claim against SMMC. The exercise of *pendent party jurisdiction*, like *pendent jurisdiction*, is of course discretionary. The court is of the opinion that it should be exercised in this case.

It is important to note three factors which distinguish this case from *Aldinger*. First, it is *only* in federal court that plaintiff herein can bring all of his claims together, since under 28 U.S.C. § 1346(b) tort claims against the federal government must be brought in federal court. The plaintiff in *Aldinger* could have brought both his § 1983 claim against the individual and his state claim against the county together in state court.[10] Although *Aldinger* does not

8. "Despite the broad language of the Act, the Government has reviewed its legislative history in an attempt to restrict its scope . . . Recognizing such a clearly defined breadth of purpose for the bill as a whole, and the general trend toward increasing the scope of the waiver by the United States of its sovereign immunity from suit, it is inconsistent to whittle it down by refinements." *Yellow Cab, supra*, 340 U.S. at 549–550, 71 S.Ct. at 404.

9. There are some cases since *Yellow Cab* which have dealt with joinder of private defendants with the United States in an action based on the FTCA and which have refused to allow joinder. These cases, however, most of which are from the Ninth Circuit, do not deal with what is required by the FTCA but only with the question of whether an independent basis of jurisdiction exists as to the individual defend-

ant. These cases all arise prior to *Gibbs* and are therefore of no value to us; they simply *assume* that an independent basis of federal jurisdiction as to each defendant is a prerequisite, a conclusion that we do not agree with in light of our combined reading of *Gibbs, Aldinger, Transok,* and *Yellow Cab*. See *Benbow v. Wolf*, 217 F.2d 203 (9th Cir. 1954); *Pacific Freight Lines v. United States*, 239 F.2d 191 (9th Cir. 1956); *United States v. Dooley*, 231 F.2d 423 (9th Cir. 1955); *Falk v. United States*, 264 F.2d 238 (6 Cir. 1959).

10. In his dissent in *Aldinger*, Justice Brennan contends that prior to *Aldinger* the question of whether a § 1983 action could be brought in state court was unsettled. See 427 U.S. at 36 n. 17, 96 S.Ct. 2413. It is certainly settled now, however, after *Aldinger*.

tell us precisely how much weight should be given to this factor, it is clearly significant.

Second, unlike *Aldinger*, in this case plaintiff's federal claim and his state claim are based upon the *same theory of law*. Since the FTCA makes the United States liable under state law, the elements which plaintiff will have to prove to establish the liability of the United States are identical to the elements which plaintiff will have to prove to establish the liability of SMMC. Without doubt a significant factor underlying the result in *Aldinger* is that different standards of proof were required to sustain the plaintiff's state and federal claims. Since counties had been excluded from liability under § 1983, the Supreme Court felt that the county should not be forced to litigate "an ordinary civil action" in federal court (absent an independent base of jurisdiction as to the county).[11] Under the FTCA, however, the "scope of the cause of action as to which federal judicial power has been extended by Congress" *includes*, without question, theories of state law. Under these circumstances, we believe that the obstacles to bringing in a *pendent party* whose liability is predicated upon the same theories of state law are far less significant than the obstacles presented in *Aldinger*.

We find support for our position from an unlikely source, the Ninth Circuit's opinion in *Aldinger*:

"[D]iversity cases have generally presented more attractive opportunities for the exercise of pendent jurisdiction over additional parties asserting state law claims than have analogous cases arising in the context of federal actions based on federal question jurisdiction. In part, this is due to the fact that since all the claims

arising in the diversity context are based on state law, they are for that reason more easily tried together than cases where the two sets of claims are based on *substantially different theories of law*." 513 F.2d at 1261 (emphasis supplied).

Since claims under the FTCA, like diversity actions, are based upon state law, we believe that the same considerations are applicable here.[12]

Finally, inasmuch as defendants are alleged joint tort-feasors, many practical factors weigh heavily in favor of these claims being tried together. These factors were well-stated by Judge Judd in *Hipp v. United States*, 313 F.Supp. 1152, 1155 (E.D.N.Y. 1970):

"The case of a joint tort-feasor made a defendant in a case under the Federal Tort Claims Act is peculiarly appropriate for application of the principle of 'the conservation of judicial energy and the avoidance of multiplicity of litigation' because the 'plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding.' If the cases were tried separately, each defendant would seek to cast the blame on the other and it would be possible for the plaintiff to recover nothing. In separate actions, if judgment in the federal court were granted against the United States alone, it might have to pay the entire damages instead of half, because of the New York rule that there is no contribution between joint tort-feasors unless there is a single judgment against both and one party has paid more than his share of the judgment. Since the United States cannot be sued in a state court, it could never enjoy the right of contribu-

---

11. The independent base of jurisdiction would typically be diversity of citizenship. It should be noted here that although a state governmental unit such as a county cannot be a *"person"* within the meaning of § 1983, it may be a *"citizen"* within the meaning of the diversity statute. See *Moor v. County of Alameda, supra.*

12. Since this is not a diversity case however, we have no occasion to enter into the quarrel between the Ninth Circuit and the Fifth Circuit as to whether diversity cases present more or less attractive opportunities for the exercise of *pendent party jurisdiction* than federal question cases. See *Ayala v. United States, supra,*

tion except by having the private codefendant sued in the federal court." [13,14]

SMMC correctly suggests that some perplexing procedural problems may arise if its motion to dismiss is denied. For example, SMMC has a right to a jury trial while tort claims against the United States must be tried by the court. 28 U.S.C. § 2402. In addition, a significant conflict of law problem may be presented since some of the acts involved occurred in Kansas while others occurred in Missouri. Further problems may arise regarding the effect of the Kansas Comparative Negligence statute. The court, however, is of the opinion that such difficulties are not insurmountable. In any event, the mere possibility of procedural difficulties does not warrant the dismissal of plaintiff's claim against SMMC at this time in view of the other factors in favor of retaining jurisdiction over the claim. See *Yellow Cab, supra*, 340 U.S. at 555–556, 71 S.Ct. 399.

The motion to dismiss is denied.

IT IS SO ORDERED.

---

550 F.2d at 1200–1201 n. 8, and *Fawvor v. Texaco*, 546 F.2d 636, 640–641 (5th Cir. 1977).

13. *Hipp* is a pre-*Aldinger* case in which *pendent party jurisdiction* in an FTCA action was upheld. In *Aldinger*, the Supreme Court cited *Hipp* (as well as *Williams v. United States, supra*) when it suggested that an FTCA action might be a more appropriate forum for the exercise of *pendent party jurisdiction* than a § 1983 action. See 427 U.S. at 18 n. 13, 96 S.Ct. 2413.

14. The danger that separate trials may lead to an illogical and unjust result is perhaps even greater in this case due to the fact that Kansas is a comparative negligence state. See K.S.A. § 60–258a. Although the status of the comparative negligence law may be unclear itself, it is entirely possible that a percentage of negligence would be attributed to the absent defendant. Thus a state jury could find that the United States was 100% negligent, while a federal court might determine that SMMC was 100% negligent, and plaintiff could recover nothing.