**Ada G. JOHNSTON, et al., Plaintiffs,**

v.

**The UNITED STATES of America, et al., Defendants.**

**Nos. 81–1060, 1061, 1100 and 1101.**

United States District Court, D. Kansas.

Sept. 16, 1982.

Ken M. Peterson, Morris, Laing, Evans, Brock & Kennedy, Christopher W. O'Brien, Redmond, Redmond, O'Brien & Nazar, Wichita, Kan., for plaintiffs.

Larry Shoaf, McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, Kan., for Aerotech World Trade Corp., Aviall, Inc. (formerly Dallas Airmotive, Inc.), Candle Aviation Supply.

T. Michael Wilson, Stinson, Wisdom, Lasswell & Wilson, Wichita, Kan., for Aviation Purchasing Services, Century Instrument Corp., S.A.L. Instrument Co., William P. Strube, Inc.

Steven Rupp, Curfman, Harris & Weigand, Wichita, Kan., for Barfield Instrument Corp., Don Horn Co., Inc.

Alvin D. Herrington, McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, Kan., for Century Instrument Corp.

Carl N. Kelly, Wichita, Kan., for A. L. Fulks d/b/a Pen Air.

Eldon Boisseau, Turner & Boisseau, Chartered, Wichita, Kan., for Ametek d/b/a U.S. Gauge, Gen. Elec. Corp., Weston Instrument, Inc.

Richard I. Manas, Manas & Marcus, P.A., Miami, Fla., for Aviation Purchasing Service.

William R. Smith, Hershberger, Patterson, Jones & Roth, Wichita, Kan., for Castleberry Instrument & Avionics, Inc., Van Dusen Air Inc.

Wallace E. Maloney, J. Michael Colpoys, Kern, Wooley & Maloney, Irving, Tex., for Aviall, Inc. (formerly Dallas Airmotive).

Dennis Phelps, Wichita, Kan., for G & L Instruments Co., Inc.

Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, Kan., for General Motors Corp. (Fisher Body), Lewis Engineering Co.

Keith E. Martin, Smith, Shay, Farmer & Wetta, Wichita, Kan., for Instrument & Flight Research.

Robert M. Siefkin, Darrell Warta, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for Speery Corp.

Steve Lester, Asst. U.S. Atty., Wichita, Kan., for U.S.A.

Steven R. Smith, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., for Aircraft Instrument & Development.

William A. Hensley, Sherwood & Hensley, Wichita, Kan., for Bendix Corp.

Rex G. Beasley, Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for Piper Aircraft Corp.

Paul B. Swartz, Martin, Pringle, Fair, Davis & Oliver, Wichita, Kan., for Sun Chemical Corp. d/b/a Kollsman Precision Aircraft Instrument Corp.

Patrick McDavitt, Levitt, Palmer, Bowen, Rotman & Share, Minneapolis, Minn., for Van Dusen Air Inc.

## MEMORANDUM AND ORDER

KELLY, District Judge.

These lawsuits arise out of injuries allegedly sustained by plaintiffs or their decedents as a result of exposure to radiation that originated in the luminous dials of aircraft instruments. The injured individuals encountered these instruments in the course of their employment with Aircraft Instrument and Development, Inc. (AID), whose business involved the repair and overhaul of such devices. Plaintiffs assert claims, grounded in a variety of tort theories, against the United States, for whom many of the instruments were manufac-

tured and who eventually disposed of many of them as surplus, against eight corporations who manufactured the instruments, and against fourteen corporations and one individual who supplied the instruments to the AID plant.

With regard to the Court's jurisdiction over the subject matter of this case, plaintiffs assert that their claims against the twenty diverse defendants are authorized by 28 U.S.C. § 1332(a)(1), that their claims against the United States are authorized by 28 U.S.C. § 1346(b), and that their claims against the two nondiverse defendants may be heard pursuant to jurisdiction pendent to their claims against the United States. A number of defendants contend that the exercise of pendent party jurisdiction is not proper in this instance, and that the presence of the nondiverse defendants thus destroys this Court's power to hear the entire case; they have accordingly moved to dismiss the claims against them. As explained below, the Court concludes that it is indeed empowered to hear the claims asserted against the nondiverse defendants, and that defendants' motions must be denied.

A necessary threshold question is whether this Court's assertion of jurisdiction over the nondiverse defendants falls within the outer limits of federal judicial power established by Article III, Section 2 of the United States Constitution. Since plaintiffs' claims against the United States are obviously permitted by the Constitution, both as a case "arising under ... the Laws of the United States" and as a controversy "to which the United States shall be a Party," that question would seem to have been answered in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The *Gibbs* court declared that:

> Pendent jurisdiction, in the sense of judicial *power,* exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority ...," US Const. Art III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court.... The State and Federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues there is *power* in federal courts to hear the whole.

383 U.S. at 725, 86 S.Ct. at 1138 (emphasis in original) (footnote and citations omitted). In this case it can hardly be denied that plaintiffs' claims against the United States derive from the same "common nucleus of operative fact" as do their claims against the remaining defendants: a simple reading of plaintiffs' complaints would suggest that the evidentiary overlap among these claims is more than substantial. By the same token, a lawsuit against alleged joint tortfeasors to recover for physical injuries is perhaps the example *par excellence* of a lawsuit that would ordinarily be expected to be tried in a single judicial proceeding. Inasmuch as the Court does not understand anyone to claim that plaintiffs' claims against the United States are insubstantial, *cf. Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), this passage from *Gibbs* seems to encompass the present case, and strongly suggests that the exercise of federal jurisdiction which plaintiffs seek is well within constitutional boundaries.

To be sure, the present case is distinguishable from *Gibbs* in at least two respects: it involves the addition of a party, rather than the mere addition of a claim, and its anchor claim is jurisdictionally grounded in 28 U.S.C. § 1346(b) rather than in 28 U.S.C. § 1331. But there are a number of reasons why *Gibbs* should be viewed as setting forth the general Article III limits on pendent party jurisdiction. To begin with, the large number of cases in which the various federal courts have adopted one form or another of pendent party jurisdiction by analogy to *Gibbs* have either ex-

pressly or implicitly viewed that case as establishing the constitutional parameters of the doctrine. *See, e.g., Transok Pipeline Co. v. Darks,* 565 F.2d 1150, 1154 (10th Cir. 1977), and cases cited therein; *Pearce v. United States,* 450 F.Supp. 613, 614–15 (D.Kan.1978). Second, an expansive reading of *Gibbs* is consistent with a tradition of liberally construing the *constitutional* grants of federal jurisdiction that was established in *Chisholm v. Georgia,* 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793); *Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat.) 304, 4 L.Ed. 97 (1816); and *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824). Finally, speaking in the analogous context of ancillary jurisdiction, the Supreme Court has expressly declared that "*Gibbs* delineated the constitutional limits of federal judicial power." *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 371, 98 S.Ct. 2396, 2401, 57 L.Ed.2d 274 (1978).[1]

The conclusion that nothing in Article III, Section 2 prevents this Court from entertaining plaintiffs' claims against the two nondiverse defendants does not end the inquiry. The jurisdictional power of the federal courts may be limited by Congress as well as by the Constitution, and it is well established that Congress has not always chosen to extend that power to the full extent permissible. *Compare, e.g., Strawbridge v. Curtis,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) *with State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967); *compare also, e.g., Osborn, supra, with Louisville & N.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). As made plain in *Alding-*

er v. *Howard,* 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976), the possibility of a congressionally imposed limitation on federal judicial power requires an inquiry into whether Congress, in the statutes that confer jurisdiction over the anchor claims, "has not expressly or by implication negated" the existence of this Court's power to hear the claims brought against the pendent parties. *Aldinger* also indicates, however, that congressional negation of such power is not to be inferred from mere "congressional silence or tacit encouragement," *id.* at 15, 96 S.Ct. at 2420: indeed, "*Aldinger* established a presumption of congressional authorization" for the exercise of pendent party jurisdiction and thus "put to lower courts the task of searching for a negative indication of intent." Note, *A closer look at pendent and ancillary jurisdiction: Toward a theory of incidental jurisdiction,* 95 Harv.L.Rev. 1935, 1952 (1982); *see also Transok Pipeline Co., supra,* 565 F.2d at 1155. In *Kroger, supra,* the Court illuminated one basis for the *Aldinger* presumption of congressional authorization: "It is not unreasonable to assume that . . . Congress did not intend to confine the jurisdiction of federal courts so inflexibly that they are unable to protect legal rights or effectively to resolve an entire, logically entwined lawsuit." 437 U.S. at 377, 98 S.Ct. at 2404.

Of course, *Aldinger* and *Kroger* both demonstrate that the presumption of authorization may be overcome by concrete evidence of contrary congressional intent. As Judge O'Connor demonstrated in his *Pearce* opinion, however, it is difficult to discern either in 28 U.S.C. § 1346(b) or in the sub-

---

1. Defendants make much of the fact that the Court of Appeals for the Ninth Circuit, in rejecting the very exercise of jurisdiction at issue here, has declared that "our difficulty with pendent party jurisdiction is a constitutional one under Article III," *Ayala v. United States,* 550 F.2d 1196, 1201 n. 8 (9th Cir. 1977), *cert. dismissed per stipulation* 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978), and also stated that the same "fundamental constitutional consideration" had underlain its previous rejection of pendent party jurisdiction in *Hymer v. Chai,* 407 F.2d 136 (9th Cir. 1969). Unfortunately, the Ninth Circuit Court of Appeals has not

gone beyond its conclusory statements in *Ayala* and *Hymer* to elucidate the basis of its purported constitutional objections to pendent party jurisdiction, *see* Currie, *Pendent Parties,* 45 U.Chi.L.Rev. 753, 754–55 (1978); a careful examination of *Hymer,* however, compels the conclusion that the Ninth Circuit's blanket rejection of all forms of pendent party jurisdiction *simply cannot be based on Art. III, § 2.* The *sole* jurisdictional defect in *Hymer* was the insufficient amount in controversy raised in the pendent claim: this is a statutory rather than a constitutional defect.

stantive provisions of the Federal Tort Claims Act any congressional disinclination to allow the federal courts to entertain claims of the sort asserted here. 450 F.Supp. at 619. Moreover, important considerations of practicality, judicial economy and fairness to the litigants support the exercise of pendent party jurisdiction in this case.[2]

Since federal district courts have exclusive jurisdiction over tort claims against the United States, if the position urged by defendants were adopted here the obvious consequence would be that plaintiffs, if they wished to recover against both the United States and the Kansas defendants, would have to file two lawsuits: one here and one in state court. Because Kansas has abolished joint and several liability in negligence and strict liability actions, *see Kennedy v. City of Sawyer,* 228 Kan. 439, 618 P.2d 788 (1980), the likelihood of two lawsuits is heightened; only by bringing all the alleged tortfeasors to the bar could plaintiffs assure themselves of a complete recovery. As noted by Judge O'Connor in *Pearce,* plaintiffs' burden would not be limited to the inconvenience of prosecuting two lawsuits instead of one. There would be a very real danger that the separate trials might lead to an inconsistent and unjust overall result, since the state jury might place the blame on the United States, this Court might place the blame on the absent Kansas defendants, and plaintiff therefore might recover nothing. 450 F.Supp. at 620–21 & n. 14. Nor is the potential burden of inconvenience borne solely by plaintiff. The plain implications of the Kansas Supreme Court's decisions in *Albertson v. Volkswagenwerk Aktiengesellschaft,* 230 Kan. 368, 634 P.2d 1127 (1981), and *Eurich v. Alkire,* 224 Kan. 236, 579 P.2d 1207 (1978), are that once a negligence or strict liability case proceeds to judgment, any such claim

against parties who could have been joined as defendants but were not is forever barred.[3] Unless plaintiffs were certain which court would be the first to reach judgment, the only way they could protect their rights would be by suing all twenty-one diverse defendants in *both* courts. We would thus be faced with a situation where twenty-five litigants would "bounce from court to court to try to find which shell the pea was under." *Shannon v. United States,* 417 F.2d 256, 263 (5th Cir. 1969).

Another plausible outcome, of course, is that plaintiffs, to avoid the burdens of duplicitous litigation and the hazards of inconsistent results, would simply abandon their claims against the Kansas defendants or against the United States. This unpalatable "solution" does not comport, however, with the plain congressional intent that even the smallest claims against the United States be heard, and in distinct contrast to the situations in *Aldinger* and *Kroger,* plaintiffs *cannot* escape their dilemma by the simple expedient of bringing their lawsuits in state court. The *Aldinger* holding "encourages" plaintiffs to bring civil rights suits against local governments in state court: that is not unjust. The *Kroger* holding "encourages" plaintiffs to bring simple state law personal injury suits in state court: that is not unjust. The holding urged in this case by defendants would "encourage" those injured by the joint malfeasance of a federal employee and a private individual to abandon their claims against one of the tortfeasors. That would be manifestly unjust, and the Court does not doubt that it was the spectre of such injustice that led the *Aldinger* court, although it held improper the particular form of pendent party jurisdiction before it, to declare that:

**2.** The Court does not mean to imply that considerations of practicality and judicial economy are in themselves inevitably sufficient to support the entertainment of claims that lack an independent basis of federal subject matter jurisdiction: *Aldinger* and *Kroger* belie any such notion. But neither of those cases suggests that practical considerations are somehow ir-

relevant, and neither case's holding raises the kinds of fairness questions discussed below.

**3.** The Court does not accept plaintiffs' contentions that the *Eurich-Albertson* doctrine extends to parties who could *not* have been joined as defendants.

[Other] statutory grants and other alignment of parties and claims might call for a different result. When the grant of jurisdiction to a federal court is exclusive, for example, as in the prosecution of tort claims against the United States under 28 U.S.C. § 1346, the argument of judicial economy and convenience can be coupled with the additional argument that *only* in a federal court may all of the claims be tried together.

427 U.S. at 18, 96 S.Ct. at 2422 (emphasis in original) (footnote omitted).

Defendants argue that an implicit congressional intent to preclude pendent party jurisdiction under Section 1346(b) can be found if that jurisdictional statute is construed *in pari materia* with Section 1332(a)(1) and its requirement of complete diversity. It must be remembered, however, that Congress' imposition of the complete diversity rule is not express; it is inferred, rather, from Congress' silence that it acquiesces in judicial interpretations of Section 1332(a)(1) and its predecessors. *Kroger, supra,* 437 U.S. at 373–74, 98 S.Ct. at 2402. Yet by the same token, "Congress has not in the past expressed disapproval of [judicially created] developments in the law of pendent and ancillary jurisdiction...." *Aldinger, supra,* 427 U.S. at 22 n. 3, 96 S.Ct. at 2424 n. 3 (Brennan, J., dissenting). Moreover, the restrictions on federal diversity jurisdiction imposed by the complete diversity rule are not rules of personal jurisdiction, and do not exist for the protection of individual litigants. They are premised, rather, on a desire to reduce the number of state law cases that are brought in federal court, thereby minimizing the potential federal infringement of state sovereignty that exists whenever federal courts must interpret questions of state law. *See* Note, *The Concept of Law-tied Pendent Jurisdiction: Gibbs and Aldinger Reconsidered,* 87 Yale L.J. 627, 636–639 & nn. 64–72. In federal tort claims act cases, however, Congress *mandates* that state law questions be decided by federal courts, and apparently encourages the joinder of private defendants. *See Pearce,* 450 F.Supp. at 618–19. The infringement of state sovereignty, if any, is not heightened by allowing the joinder of identical claims against additional parties. Defendants' implicit argument is that Congress is so enthralled by the obscure, abstract notions of federalism that underly the complete diversity rule that it has lost sight of practical realities, common sense, and simple fairness. This Court is not inclined to malign the Congress of the United States by accepting that argument.

IT IS ACCORDINGLY ORDERED that defendants' motion to dismiss for want of subject matter jurisdiction be denied.